UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

UNITED STATES OF AMERICA,

      Plaintiff,

v.                                  Case No. 2:12-cr-12-09
                                          HON. R. ALLAN EDGAR

ROBIN GINE VOELKER,

      Defendant.

_____/

## **REPORT AND RECOMMENDATION**

      Defendant Robin Gine Voelker moves to suppress statements that she made during an interview after her arrest on January 9, 2013. A hearing was held on June 4, 2013. Defendant argues that the statements were a product of coercion and not voluntarily made. On November 7, 2012, defendant was indicted by a grand jury for conspiracy to distribute and possess heroin and cocaine base. A warrant was issued for defendant's arrest.

      At the hearing, DEA Special Agent Jeffrey Poikey and Michigan State Police Detective Jeff Marker testified that they executed the arrest warrant on January 9, 2013, at about 4:00 p.m. That date was selected because they were both busy and it was the best date to coordinate the arrest. Detective Marker also testified that they purposely waited until after the holiday season to make the arrest. Detective Marker testified that his work shift begins at 2:00 p.m. Special Agent Poikey met Detective Marker in Escanaba on January 9, 2013. The two officers proceeded to Stevenson, Michigan, where defendant resides. They knocked on the door of her residence and there was no answer. Detective Marker knew that defendant's parents lived nearby, so the officers pulled

into a VFW hall and watched defendant's parents' home for about 45 minutes to one hour. Detective Marker then telephoned defendant and explained that he wanted to talk to her at her home. The officers observed defendant leave her parents' home and drive to her home. The officers followed defendant to her home and defendant took them inside her home. The officers told defendant that they had a warrant for her arrest. Special Agent Poikey read defendant Miranda rights from a card that he carries in his wallet. Defendant stated that she understood each right. Defendant was cooperative during the arrest, but expressed concern about her children. Defendant was informed that she would be taken to Marquette, Michigan, lodged in the county jail, and would appear before a federal magistrate judge the next day.

Defendant was handcuffed in the front and placed in the rear of the officer's vehicle for transport to Marquette. During the drive to Escanaba to retrieve Detective Marker's vehicle, Special Agent Poikey conducted an interview after reminding defendant of her Miranda rights. Special Agent Poikey stated that he was interested in getting defendant to talk to him and getting her to cooperate with the investigation. Defendant was informed that a magistrate judge would determine whether defendant would be detained. The officers informed defendant that since she was cooperative, had a residence in Stevenson, and had children, it was unlikely that the Assistant United States Attorney would move for her detention.

During the interview, defendant stated that she met Leroy Evans or "Country" and had a short relationship with him. Defendant learned that Evans had been arrested. At some point, Evans called defendant and asked her to contact his brother Mike from Milwaukee, Wisconsin. She stated that she did not do anything wrong, but admitted picking up money owed to Mike and sending the money to Mike on a weekly basis. At some point, she learned that the money was payment for heroin

and cocaine base. She stated that she did this for six to eight months. When she made the statement that she was not involved in the distribution or use of cocaine, the officers responded that they did not believe her. Defendant responded that "they were just small amounts."

Defendant argues that her statements were made involuntarily because her arrest was made at 4:00 p.m., making it impossible for arraignment to occur until the next day. Defendant suggests that the officers encouraged her to cooperate, implying that the judge would be more favorable to her if she cooperated. Defendant further maintains that the officers tricked her into cooperating by offering her a release on bond.

When a defendant claims that his confession was coerced, the government bears the burden of proving by preponderance of the evidence that defendant's waiver was voluntary. *See Lego v. Twomey*, 404 U.S. 477, 489 (1972); *North Carolina v. Butler*, 441 U.S. 369 (1979). In determining whether or not the waiver was voluntary, the Court is required to look at the totality of the circumstances to determine whether or not the police officers engaged in coercive conduct during the interrogation and whether or not the coercive conduct resulted in the incriminating statements. *See Colorado v. Connelly*, 479 U.S. 157 (1986). Factors which should be considered are the location of the questioning, whether *Miranda* warnings were given, the number of interrogators, the length of questioning, whether or not the defendant was denied food, water or toilet facilities, and whether the police used threats, promises, lies or tricks. *Id*.

In *Connelly*, the court rejected the argument that a defendant's mental state without police coercion was enough to suppress a confession as involuntary. In that case, the defendant suffered from chronic schizophrenia. The voice of God told defendant to confess to the murder. Defendant contacted police and confessed to the murder. The Supreme Court rejected the contention

that defendant's mental state alone rendered the confession involuntary. "But this fact does not justify a conclusion that a defendant's mental condition, by itself and apart from its relation to official coercion, should ever dispose of the inquiry into constitutional 'voluntariness.'" *Id*. at 164.

In *Daoud v. Davis*, 618 F.3d 525 (6th Cir. 2010), the court explained:

Daoud contends that he did not knowingly and intelligently waive his Miranda rights when he confessed to his mother's murder and that admitting those statements at trial violated his Fifth Amendment rights. In *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the Supreme Court established "certain procedural safeguards that require police to advise criminal suspects of their rights under the Fifth and Fourteenth Amendments before commencing custodial interrogation." *Duckworth v. Eagan*, 492 U.S. 195, 201, 109 S.Ct. 2875, 106 L.Ed.2d 166 (1989). However, a suspect may waive his Miranda rights "provided the waiver is made voluntarily, knowingly, and intelligently." *Miranda*, 384 U.S. at 444, 86 S.Ct. 1602. This inquiry "has two distinct dimensions." *Colorado v. Spring*, 479 U.S. 564, 573, 107 S.Ct. 851, 93 L.Ed.2d 954 (1987) (quoting *Moran v. Burbine*, 475 U.S. 412, 421, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986)).

First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it. Only if the "totality of the circumstances surrounding the interrogation" reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the Miranda rights have been waived.

*Moran*, 475 U.S. at 421, 106 S.Ct. 1135 (quoting *Fare v. Michael C.*, 442 U.S. 707, 725, 99 S.Ct. 2560, 61 L.Ed.2d 197 (1979)).

To be deemed knowing and intelligent, "[t]he Constitution does not require that a criminal suspect know and understand every possible consequence of a waiver of the Fifth Amendment privilege." *Spring*, 479 U.S. at 574, 107 S.Ct. 851. Instead, "we examine 'the particular facts and circumstances surrounding [the] case, including the

background, experience, and conduct of the accused,'" *Garner v. Mitchell*, 557 F.3d 257, 261 (6th Cir.2009) (alterations in original) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938)), to determine "whether the 'suspect [knew] that he [could] choose not to talk to law enforcement officers, to talk only with counsel present, or to discontinue talking at any time,'" *id*. (alterations in original) (quoting *Spring*, 479 U.S. at 574, 107 S.Ct. 851.)

*Id.* at 528-530. *See also Garner v. Mitchell*, 557 F.3d 257 (6th Cir. 2009).

Defendant presented the court with the recent unpublished Sixth Circuit opinion *United States v. Siler*, No. 11-5975 (6th Cir., May13, 2013), as authority. In that case, the Sixth Circuit found that the statements made by defendant were not voluntary. The officer read defendant *Miranda* rights and defendant waived those rights. The officer misrepresented the evidence and told defendant they had a pretty good case against defendant for two burglaries. Further, the officer made the promise that if defendant helped locate a handgun, he would use his clout with the district attorney to assure that defendant would receive drug rehabilitation instead of jail time. He further told defendant that he would speak to the probation officer and inform him that defendant was a good candidate for probation. The officer stated that defendant would not be charged with a crime if he cooperated.

In a second interview, the officer told defendant that he could not make any promises, but he would speak to the district attorney. Defendant waived his *Miranda* rights, but indicated that he did not want to incriminate himself. The officer stated that he would speak with the district attorney and the attorney always worked with him and would this time. Defendant then confessed to the crime and indicated that he sold the gun to his nephew. The officer then told defendant he would speak with the district attorney and that the case would not go to federal court. Defendant was then  charged in federal court and pleaded under an agreement that allowed him to challenge his

statements.  Defendant was convicted to sixteen years imprisonment and five years of supervised release.  The Sixth Circuit found that the officer's offers of leniency were coercive and were the motivating factors in defendant's confession.  The Sixth Circuit found that the government failed to show that defendant's confession was voluntary.

The Sixth Circuit has established three factors to determine whether a confession was involuntary:  the police activity was objectively coercive; the coercion in question was sufficient to overbear the defendant's will; and the alleged police misconduct was the crucial motivating factor in the defendant's decision to offer the statement.  *United States v. Mahan*, 190 F.3d 416, 422 (6th Cir. 1999).

In this case, the statements made by defendant were voluntary and not the product of coercion.  The government established that the arrest occurred at 4:00 p.m. because that was the time that was convenient for the officers making the arrest.  Detective Marker worked the afternoon shift and began work at 2:00 p.m.  There was nothing coercive about the time of the arrest.  The testimony of the officers establishes that defendant understood her *Miranda* rights and voluntarily waived those rights.  No promises were made to defendant in exchange for her statements.  Nothing said or done by either Special Agent Poikey or Detective Marker amounted to prohibited coercive conduct.  The government has established that defendant's statements were voluntary after she made a valid wavier of *Miranda* rights.

Accordingly, it is recommended that defendant Robin Voelker's Motion to Suppress Statement (docket #253) be denied.

NOTICE TO PARTIES:  Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt

of this Report and Recommendation.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich.

LCivR 72.3(b).  Failure to file timely objections constitutes a waiver of any further right to appeal.

*United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985).


 /s/ Timothy P. Greeley                                   
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated:  June 14, 2013